**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

THE UNITED STATES OF AMERICA §
For the use and benefit of §
CABLING CONCEPTS, INC., §
an Oklahoma Corporation §
§
    Plaintiff §
§
Vs. §        CASE NUMBER:_____
§
(1) CHEROKEE NATION §
ENVIRONMENTAL SOLUTIONS, LLC; §
§
(2) CONTI FEDERAL SERVICES, INC.; §
§
(3) CF2 CONSTRUCTION, LLC; §
§
(4) UNLIMITED CONTRACTORS, LLC; §
§
(5) HARCO NATIONAL §
INSURANCE COMPANY; and §
§
(6) TRAVELERS CASUALTY AND §
SURETY COMPANY OF AMIERICA §
§
    Defendants §

---

## COMPLAINT

---

Plaintiff, the United States of America, for the use and benefit of Cabling

Concepts, Inc., ("CCI") for its Complaint against Defendants, Cherokee Nation

Environmental Solutions, LLC, ("Cherokee") Conti Federal Services, Inc., ("Conti") CF2

Construction, LLC ("CF2 Construction") Unlimited Contractors, LLC ("Unlimited")

Harco National Insurance Company ("Harco") and Travelers Casualty and Surety Company of America ("Travelers") (collectively, "Defendants") alleges and states as follows:

**<u>PARTIES</u>**

1. Plaintiff Cabling Concepts, Inc., is an Oklahoma Corporation with its principal place of business in Edmond, Oklahoma County, Oklahoma.

2. Defendant Cherokee is an Oklahoma Foreign limited liability company with its principal place of business in Tulsa, Oklahoma.

3. Defendant Conti is an Oklahoma Foreign for profit business corporation with its principal place of business in Orlando, Florida.

4. Defendant CF2 Construction, is a Delaware limited liability company with its principal place of business in Tulsa, Oklahoma. CF2 Construction is a joint venture between Conti Federal Services, LLC and Cherokee Nation Environmental Solutions, LLC.

5. Defendant Unlimited is an Arkansas limited liability company with its principal place of business in Bentonville, Arkansas.

6. Defendant Harco is an Illinois corporation authorized to do business in Oklahoma and co-issued the payment bond at issue in this case.

7. Defendant Travelers is a surety company authorized to do business in Oklahoma and co-issued the payment bond at issue in this case.

**JURISDICTION AND VENUE**

8.      The claims against Defendants arise under the Miller Act, 40 U.S.C. § 3131 *et seq*. to recover unpaid sums for labor and materials furnished in the prosecution of a federal public works project.

9.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 40 U.S.C. § 3133(b). This Court also has supplemental subject matter jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this Court under 40 U.S.C. § 3133(b)(3) because the contract was performed and executed at Tinker Air Force Base, which is located within the Western District of Oklahoma.

**RELATION OF THE PARTIES**

11.     The Miller Act requires prime contractors on federal construction projects to furnish a payment bond to protect subcontractors and suppliers who cannot file mechanics' liens against federal property. 40 U.S.C. § 3131(b).

12.     The Act expressly authorizes second-tier subcontractors—those who contract with a first-tier subcontractor but not directly with the prime contractor—to bring a civil action on the payment bond when they are not paid. 40 U.S.C. § 3133(b)(2).

13.     Plaintiff Cabling Concepts, Inc., ("CCI") is exactly the type of claimant the Miller Act was enacted to protect.

14.     Defendant Cherokee Nation Environmental Solutions, LLC ("Cherokee") was the Prime Contractor on the federal construction project. (Exhibit 1)

15.     Defendant Unlimited Contractors, LLC ("Unlimited") was a first-tier

subcontractor to Cherokee.  (Exhibit 2)

16.     Plaintiff Cabling Concepts, Inc., ("CCI") was a second-tier subcontractor that furnished labor and materials for the federal project at issue under a contract with Unlimited. (Exhibit 3)

17.     Defendants Conti Federal Services, LLC ("Conti"), Cherokee Nation Environmental Solutions, LLC ("Cherokee") and CF2 Construction, LLC ("CF2") are all co-principals on the Miller Act payment bond issued for the project.  (Exhibit 4)

18.     Defendant Harco National Insurance Company together with Travelers Casualty and Surety Company of America are the joint sureties that issued the Miller Act payment bond required by 40 U.S.C. § 3131.  (Exhibit 4)

## FACTUAL BACKGROUND

### A.     Federal Project and Tier Structure

19.     The project involved construction work at Tinker Air Force Base, a federal installation, located in Oklahoma County, Oklahoma.

20.     Cherokee entered into a federal construction contract requiring the furnishing of labor and materials. Cherokee was the prime contractor on the project. (Exhibit 1)

21.     Cherokee subcontracted portions of the work to Unlimited, making Unlimited a first-tier subcontractor. (Exhibit 2)

22.     Unlimited subcontracted communications and fiber-related work to CCI, making CCI a second-tier subcontractor. (Exhibit 3)

23. A Miller Act payment bond was issued for the project naming Cherokee, Conti, and CF2 as principals and surety. (Exhibit 4)

24. This tier structure places CCI squarely within the class of claimants expressly protected by the Miller Act. 40 U.S.C. § 3133(b)(2); *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102 (1944).

25. Conti claimed in Case number 5:20-25-cv-00885-HE, (a separate Miller Act Claim on the same project) that CF2 was the Prime Contractor in an attempt to establish another tier level and move claimants down a tier level in that case. CF2 is the joint venture between Conti and Cherokee, which creates a false tier because they are essentially contracting with themselves.

26. CCI stands at the same second-tier level in this case. Exhibits 1, and 2 dated years earlier clearly show Cherokee as the Prime Contractor. Conti's Motion was DENIED. (Exhibit 5)

**B. Performance by Cabling Concepts, Inc.**

27. From May 1, 2024 through July 7, 2025, CCI furnished labor and materials in prosecution of the work required by the federal contract.

28. CCI's work included communications infrastructure, fiber installation, and testing.

29. CCI consistently complied with certified payroll requirements.

30. Cherokee later confirmed that CCI was the only contractor on the project properly submitting certified payroll.

31. CCI's performance was repeatedly praised by project management and has

never been disputed as deficient.

32. The last date on which labor was performed or materials were supplied by CCI for this project was July 7, 2025. CCI completed its contractual obligations.

33. CCI timely filed its bond claim on July 21, 2025, with service of said claim on Defendants Harco and Travelers. Defendants Harco and Travelers have done absolutely nothing regarding the claim other than to say its has been reassigned to various claims persons and is under continuing review. All information requested by them has been supplied.

### C. Billing Process and Payment Failures

34. CCI submitted invoices identifying the labor and materials furnished, the dates of performance, and the amounts due, in accordance with instructions provided by Unlimited.

35. It is believed that Unlimited has received payment for work performed by CCI but failed to remit full payment to CCI.

36. As of the filing of this Complaint, CCI remains unpaid in the total amount of $420,900.93 attributable to the following invoices for labor and materials furnished on the Tinker AFB 9201 project. Invoices attached. (Exhibit 6)

37. CCI has not been paid in full within the ninety (90) days after the last furnishing labor and materials for which its claim is made.

38. Despite repeated demands, Defendants have failed and refused to pay the amounts due.

**D. Acceptance of Work by the Army Corp of Engineers.**

39. After completion of the work CCI performed, it was certified that all of the fiber lines and other work had been completed in accordance with the specifications given.

40. The Army Corp of Engineers, who is ultimately responsible for the successful completion of the project, has accepted CCI's work as complete. (Exhibit 7)

41. No reason has been stated for the payments being withheld from CCI.

**E. Miller Act Notice**

42. As a second-tier subcontractor, CCI provided written notice to the Prime Contractor within ninety (90) days after last furnishing labor and materials, as required by 40 U.S.C. § 3133(b)(2).

43. The notice stated:

    a. the amount claimed; and

    b. the name of the party to whom the labor and materials were furnished.

44. Defendants Harco and Travelers acknowledged receipt of the claim and requested supporting documentation which CCI provided.

45. Despite proper notice and documentation, Defendants failed and refused to pay the amounts due.

**F. Statutory Basis for Relief and Pleading Standing**

46. CCI brings this action pursuant to the express statutory authorization contained in 40 U.S.C. § 3133(b)(2).

47. CCI alleges specific facts establishing:

    a.     a federal public works project;

    b.     a valid Miller Act payment bond;

    c.     a direct contractual relationship with a first-tier subcontractor;

    d.     the furnishing of labor and materials in prosecution of the work;

    e.     nonpayment within ninety (90) days; and

    f.     timely written notice to the prime contractor.

48. These allegations are factual, project-specific, invoice-specific, and amount-specific, and establish CCI's entitlement to relief under the Miller Act.

49. No showing of agency, authorization, or privity with the prime contractor is required to state a claim under 40 U.S.C. § 3133(b)(2). *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 107 (1944).

50. The Miller Act is highly remedial and must be liberally construed to protect those who furnish labor and materials to federal projects. *United States ex rel. Sherman v. Carter*, 353 U.S. 210 (1957); *T.F. Scholes, Inc. v. United States*, 295 F.2d 366 (10th Cir. 1961).

## **CLAIM FOR RELIEF**

51. Plaintiff incorporates all preceding paragraphs.

52. CCI furnished labor and materials in prosecution of work in accordance with a federal contract.

53. CCI has not been paid in full within ninety (90) days after last furnishing labor or materials.

54.     Defendants, as principals and surety on the Miller Act payment bond, are jointly and severally liable to CCI in the amount of $420,900.93.

**Damages**

55.     Plaintiff seeks judgment against Defendants for:

a.     $420,900.93 in unpaid labor and materials;

b.     Pre-judgment and post-judgment interest as allowed by law;

c.     Costs of suit and attorneys' fees where permitted; and

d.     All other relief the Court deems just and proper.

Dated:  February 10, 2026.

Respectfully submitted,

*/s/ Robert W. Buchholz*

_____
Robert W. Buchholz
**The Law Office of Robert W. Buchholz, P.C.**
Oklahoma Bar No. 1278
Texas Bar No. 03290600
Arkansas Bar No. 98-222
5220 Spring Valley Road, Suite 618
Dallas, Texas 75254
Tel:(214) 754-5500
Fax:(214) 754-9100
Email:  bob@attorneybob.com
Attorney for Plaintiff
Cabling Concepts, Inc.