**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

(1) UNITED STATES OF AMERICA
    FOR THE USE AND BENEFIT OF
    CABLING CONCEPTS, INC.,
    an Oklahoma Corporation,

            Plaintiff,

v.

(1) CHEROKEE NATION
    ENVIRONMENTAL SOLUTIONS,
    L.L.C.;

(2) CONTI FEDERAL SERVICES, INC.
    successor in interest to CONTI
    FEDERAL SERVICES, INC.;

(3) CF2 CONSTRUCTION;

(4) UNLIMITED CONTRACTORS,
    LLC;

(5) HARCO NATIONAL INSURANCE
    COMPANY; and

(6) TRAVELERS CASUALTY AND
    SURETY COMPANY OF
    AMERICA,

            Defendants.

Case No. 5:26-cv-00236-HE

**CHEROKEE NATION ENVIRONMENTAL SOLUTIONS, L.L.C.'S
THIRD-PARTY COMPLAINT AGAINST
<u>THE OHIO CASUALTY INSURANCE COMPANY</u>**

Pursuant to Fed. R. Civ. P. 14(a), Defendant Cherokee Nation Environmental

Solutions, L.L.C. ("CNES") hereby asserts the following Third-Party Complaint against

The Ohio Casualty Insurance Company ("OCIC"). In support thereof, CNES alleges and

states as follows:

<div style="border:1px solid black; display:inline-block; padding:8px; text-align:center;">

**EXHIBIT**

**2**

</div>

## PARTIES, JURISDICTION, AND VENUE

1.      CNES is a foreign limited liability company with its principal place of business in Orlando, Florida.

2.      OCIC is a New Hampshire company authorized to do business in Oklahoma, and OCIC issued a Payment Bond and Performance Bond that are at issue in this case.

3.      The original action was brought pursuant to the Miller Act (40 U.S.C. §§ 3131 et seq.) and supplemental subject matter jurisdiction (28 U.S.C. § 1367(a)). *See* Complaint, Doc. 1, ¶¶ 8-9.

4.      As stated in the Complaint, this Court has personal jurisdiction over the parties and venue is proper in this Court pursuant to 40 U.S.C. § 3133(b)(3) as the construction project at issue is located at Tinker Air Force Base in Oklahoma County, Oklahoma. *See* Complaint, Doc. 1, ¶ 10.

5.      This Court has jurisdiction pursuant to Fed. R. Civ. P. 14 as the Third-Party Complaint arises out of the transaction or occurrence that is the subject matter of the original action and/or relates to any property that is the subject matter of the original action and as OCIC may be liable to CNES for all or part of the claims asserted against CNES in this action.

## STATEMENT OF FACTS

6.      CNES adopts and incorporates by reference the preceding paragraphs.

7.      On or around October 19, 2021, CNES and Conti Federal Services, Inc. ("Conti") entered into a Joint Venture Agreement, creating CF2 Construction.

8. On or around September 23, 2022, the United States Army Corps of Engineers awarded Contract Number W912BV22C0025 to CF2 Construction for construction at Tinker Air Force Base (the "Project").

9. CNES issued Subcontracts Numbered 24700-0501, 24700-0502, 247-0505 (collectively, the "Subcontracts" or the "Construction Contract") to Unlimited Contractors, LLC ("Unlimited") dated February 13, 2023, to provide labor, material, and/or equipment for the Project.

10. On or around March 21, 2023, Unlimited secured a Performance Bond and a Payment Bond with OCIC related to the Project (collectively, the "Bonds"). *See* Performance Bond and Payment Bond attached hereto as Exhibits 1 and 2. Pursuant to the Bonds, Unlimited is the Contractor, CNES is the Owner, and OCIC is the Surety.

11. Subsequently, Unlimited contracted with certain sub-subcontractors related to the Project, including, but not limited to, Cabling Concepts, Inc. ("Cabling Concepts").

12. Along with submitting unapproved change orders, Unlimited failed to file Certified Payroll Reports, failed to follow proper procedures required by the Subcontracts, failed to provide requested information and/or supporting documentation to CNES, and failed to ensure its written agreements with its sub-subcontractors were in compliance with the Subcontracts.

13. On or around July 21, 2025, CNES received a Federal Miller Act Bond Claim Notice from Cabling Concepts, claiming an unpaid sum of approximately $420,900.93 (the "Claim").

14. In an attempt to resolve the Claim, CNES requested information from Unlimited several different times to understand the details, which is an express requirement of the Subcontracts.

15. Specifically, as stated in the Subcontracts, "Subcontractor shall, as often as requested by Contractor, furnish such information, evidence and substantiation as Contractor may require with respect to the extent and value of current progress and the nature and extent of all obligations incurred by Subcontractor in connection with the Work and all payments made by Subcontractor on account thereof."

16. In response to CNES' numerous requests, Unlimited failed to provide the requisite information, evidence, and/or substantiation.

17. Specifically, on February 10, 2025, CNES requested a list of information from Unlimited so that CNES could understand the issues and all actions Unlimited has taken to try and resolve the Claim.

18. However, Unlimited's response (the "Response Letter") only presented a few sentences about adjustments made to invoices without the appropriate details. No dates, examples, or records were provided to support its accounting of events regarding the Claim.

19. Furthermore, the Response Letter did not provide an appropriate accounting or description of each circumstance for CNES's consideration or possible action.

20. Subsequently, as set forth in CNES' March 13, 2025, letter, CNES tried to resolve this matter with Unlimited *again* and requested Unlimited's cooperation in order to resolve the Claim.

21. In the March 13, 2025, letter, CNES informed Unlimited that if it has a true controversy with these parties, CNES required a full accounting and a statement of the appropriate details for consideration be provided to CNES in addition to Unlimited's fulfillment of any information requests made by the bonding company.

22. Despite these attempts, Unlimited failed to resolve the issues, resulting in an investigation conducted by the U.S. Army Corp. of Engineers and the Department of Labor ("DOL") regarding issues with Unlimited's (i) wrongful classification of employees as apprentices without proper documentation, (ii) low voltage workers performing high voltage work, (iii) large sums of money being withheld from employee paychecks without proper documentation, (iv) unverified fringe benefit payments, and (v) failure to properly submit Certified Payroll Records.

23. Ultimately, as a result of Unlimited's actions and/or inactions, Cabling Concepts filed a Federal Miller Act Bond Claim and the present lawsuit.

24. Additionally, upon information and belief, there may have been issues with Cabling Concepts' performance.

25. Pursuant to the Performance Bond, "[i]f [Unlimited] performs the Construction Contract, [OCIC] and [Unlimited] shall have no obligation under this Bond. . . ." See Exhibit 1, Section 2.

26. As set forth herein, Unlimited has failed to perform the Construction Contract.

27. Additionally, pursuant to the Payment Bond, "[i]f [Unlimited] promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless

[CNES] from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then [OCIC] and [Unlimited] shall have no obligation under this Bond." *See* Exhibit 2, Section 2.

28. The Payment Bond further states that once OCIC is notified of a claim, demand, lien, or suit against CNES, OCIC "shall promptly and at [OCIC's] expense defend, indemnify and hold harmless [CNES]. . . ." *See* Exhibit 2, Section 4.

29. CNES sent a letter to OCIC demanding that it defend, indemnify, and hold CNES harmless related to the present lawsuit.

30. Accordingly, OCIC is required to defend CNES, and CNES is entitled to indemnification from OCIC with regard to any resulting claims, losses, or damages to the full extent allowed by law and/or the Bonds.

## COUNT I - INDEMNIFICATION

31. CNES adopts and incorporates by reference the preceding paragraphs.

32. As set forth above, pursuant to the Payment Bond, OCIC agreed to "promptly and at [OCIC]'s expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit."

33. As of the date of this Third-Party Complaint, CNES has tendered the claims set forth in the Complaint to OCIC.

34. As such, OCIC is obligated to defend and indemnify CNES from all claims advanced by Plaintiff in this action.

35. Any damages incurred by Plaintiff are due to Unlimited's breach(es) of the Subcontracts and/or the fault of Unlimited.

36. Accordingly, CNES is entitled to indemnity from OCIC relating to any damages incurred by Plaintiff as a result of Unlimited's breach(es) of the Subcontracts and/or the fault of Unlimited.

37. Therefore, should CNES suffer any loss, damage, expense, attorneys' fees, liability, or judgment arising from Plaintiff's claims, OCIC is liable to indemnify CNES, including payment of attorneys' fees, costs, expenses, and pre- and post-judgment interest.

## COUNT II – PAYMENT UNDER THE BONDS

38. CNES adopts and incorporates by reference the preceding paragraphs.

39. Any damages incurred by Plaintiff are due to Unlimited's breach(es) of the Subcontracts and/or the fault of Unlimited.

40. Accordingly, should CNES suffer any loss, damage, expense, attorneys' fees, liability, or judgment arising from Plaintiff's claims, such amounts shall be paid from the Bonds.

## PRAYER FOR RELIEF

WHEREFORE, CNES prays for the relief requested herein and for such other further relief as the Court deems just and proper.

Respectfully submitted,


<u>/s/ P. Scott Hathaway</u>
P. Scott Hathaway, OBA #13695
Kayla N. Finnegan, OBA #34651
CONNER & WINTERS, LLP
4100 First Place Tower
15 East 5th Place
Tulsa, Oklahoma 74103
(918) 586-5711
(918) 586-8547 fax
shathaway@cwlaw.com
kfinnegan@cwlaw.com
***Attorneys for Defendants CF2, CNES,
Harco, and Travelers***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the _____ day of May, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.   Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record, namely:

Robert W. Bucholz
Robert B. Sartin
Adam Ron Poliner
Anna Broadaway
Benjamin L. Williams
Jake A. Seidel
Lawrence M. Prosen
Melvin R. McVay, Jr.

/s/ *P. Scott Hathaway*
P. Scott Hathaway

Bond No. 18L005820

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## Performance Bond

**CONTRACTOR:**
*(Name, legal status and address)*

Unlimited Contractors, LLC
84 Yocum Road
Rogers, AR 72756

**OWNER:**
*(Name, legal status and address)*

Cherokee Nation Environmental Solutions, LLC
10838 E. Marshall Street, Suite 220D
Tulsa, OK 74116

**SURETY:**
*(Name, legal status and principal place of business)*
The Ohio Casualty Insurance Company
175 Berkeley Street
Boston, MA 02116
**Mailing Address for Notices**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date:     February 13, 2023
Amount: $ 2,000,000.00     Two Million  Dollars and 00/100

Description:
*(Name and location)*

24700-0501 - Tinker WAG SCIF Project, Labor Only Phase 1

**BOND**
Date:     March 21, 2023
*(Not earlier than Construction Contract Date)*

Amount: $ 2,000,000.00     Two Million  Dollars and 00/100

Modifications to this Bond:      ☐ None      ☒ See Section 16

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| Unlimited Contractors, LLC | | The Ohio Casualty Insurance Company | |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: Christian Collins  Attorney-in-Fact | |



*(Any additional signatures appear on the last page of this Performance Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**

Nielson
220 Congress Park Drive, Suite 100
Delray Beach, FL 33445

561.454.8210

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

EXHIBIT
1

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

§ 2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise after

.1  the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2  the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3  the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

§ 4 Failure on the part of the Owner to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations, except to the extent the Surety demonstrates actual prejudice.

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1  After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2  Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Section 5.4, and the Owner refuses the payment or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. Subject to the commitment by the Owner to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for

- .1 the responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;
- .2 additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and
- .3 liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

§ 9 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, successors and assigns.

§ 10 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 11 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after a declaration of Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 12 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears.

§ 13 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## § 14 Definitions
§ 14.1 Balance of the Contract Price. The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

§ 14.2 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and changes made to the agreement and the Contract Documents.

§ 14.3 Contractor Default. Failure of the Contractor, which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract.

§ 14.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 14.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 15 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 16** Modifications to this bond are as follows:

In this document, substitute "Subcontractor" for "Contractor" and substitute "Contractor" for "Owner".

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**           **SURETY**

Company:        *(Corporate Seal)*       Company:        *(Corporate Seal)*

Signature: _____     Signature: _____
Name and Title:                 Name and Title:
Address                          Address

# Document A312™ – 2010

Conforms with The American Institute of Architects AIA Document 312

## Payment Bond

**CONTRACTOR:**
*(Name, legal status and address)*

Unlimited Contractors, LLC
84 Yocum Road
Rogers, AR 72756

**OWNER:**
*(Name, legal status and address)*

Cherokee Nation Environmental Solutions, LLC
10838 E. Marshall Street, Suite 220D
Tulsa, OK 74116

**SURETY:**
*(Name, legal status and principal place of business)*
The Ohio Casualty Insurance Company
175 Berkeley Street
Boston, MA 02116
**Mailing Address for Notices**

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

**CONSTRUCTION CONTRACT**
Date: February 13, 2023
Amount: $ 2,000,000.00    Two Million Dollars and 00/100

Description:
*(Name and location)*

24700-0501 - Tinker WAG SCIF Project, Labor Only Phase 1

**BOND**
Date: March 21, 2023
*(Not earlier than Construction Contract Date)*

Amount: $ 2,000,000.00    Two Million Dollars and 00/100

Modifications to this Bond:  ☐ None    ☒ See Section 18

| CONTRACTOR AS PRINCIPAL | SURETY | |
| --- | --- | --- |
| Company: *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| Unlimited Contractors, LLC | The Ohio Casualty Insurance Company | |
| Signature: _____ | Signature: _____ | |
| Name and Title: | Name and Title: Christian Collins  Attorney-in-Fact | |

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*

**AGENT or BROKER:**

Nielson
220 Congress Park Drive, Suite 100
Delray Beach, FL 33445

561.454.8210

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

EXHIBIT 2

**§ 1** The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

**§ 2** If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

**§ 3** If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

**§ 4** When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

**§ 5** The Surety's obligations to a Claimant under this Bond shall arise after the following:

**§ 5.1** Claimants, who do not have a direct contract with the Contractor,

    .1    have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

    .2    have sent a Claim to the Surety (at the address described in Section 13).

**§ 5.2** Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

**§ 6** If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

**§ 7** When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

**§ 7.1** Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

**§ 7.2** Pay or arrange for payment of any undisputed amounts.

**§ 7.3** The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

**§ 8** The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

**§ 9** Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:
    .1    the name of the Claimant;
    .2    the name of the person for whom the labor was done, or materials or equipment furnished;
    .3    a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4    a brief description of the labor, materials or equipment furnished;
    .5    the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6    the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7    the total amount of previous payments received by the Claimant; and
    .8    the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

**§ 16.4 Owner Default.** Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

**§ 16.5 Contract Documents.** All the documents that comprise the agreement between the Owner and Contractor.

**§ 17** If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

**§ 18** Modifications to this bond are as follows:

In this document, substitute "Subcontractor" for "Contractor" and substitute "Contractor" for "Owner".

*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

**CONTRACTOR AS PRINCIPAL**
Company: *(Corporate Seal)*

**SURETY**
Company: *(Corporate Seal)*

Signature: _____
Name and Title:
Address

Signature: _____
Name and Title:
Address